# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3175

_____

United States of America

*Plaintiff - Appellee*

v.

Aldo Lopez Martinez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: May 12, 2014
Filed: June 30, 2014

_____

Before RILEY, Chief Judge, BEAM and SMITH, Circuit Judges.

_____

RILEY, Chief Judge.

This case requires us to decide whether a district court performing a modified categorical analysis to determine whether a prior state conviction qualifies for a sentencing enhancement may rely upon allegations in a superseded indictment to which the defendant did not plead guilty. Like every other circuit to address this question, see, e.g., United States v. Bonilla, 524 F.3d 647, 652-53 (5th Cir. 2008), we

conclude the district court may not. We therefore reverse the district court's determination that Aldo Lopez Martinez's Arizona conviction for solicitation to commit "misconduct involving weapons," Ariz. Rev. Stat. § 13-3102, qualifies as "a firearms offense" under U.S. Sentencing Guidelines (U.S.S.G. or Guidelines) § 2L1.2(b)(1)(A)(iii) (2012).

## I.    BACKGROUND

Lopez Martinez pled guilty to violating 8 U.S.C. § 1326(a)-(b)(1)[1] by being found in the United States after committing a felony and being deported. The government sought a sentencing enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(iii), which adds 16 levels for a prior felony conviction "that is . . . a firearms offense" and "receives criminal history points under [Guidelines] Chapter Four." To prove Lopez Martinez had a prior conviction qualifying for this firearms offense enhancement, the government introduced the following documents:

1.    A criminal information alleging the defendant "knowingly manufactured, possessed, transported, sold, or transferred a SAWED-OFF SHOTGUN, a prohibited weapon";

2.    A signed agreement, which "serve[d] to amend the . . . information, to charge the offense to which the Defendant pleads, without the filing of any additional pleading," to plead guilty to "Count 2, as amended, Solicitation to commit Misconduct Involving Weapons, a Class 6 undesignated felony offense"; and

3.    A judgment of conviction from the Maricopa County, Arizona, Superior Court, adjudging the defendant guilty of "Count 2 Amended: Solicitation to commit misconduct involving weapons," and requiring him to forfeit a "sawed-off shotgun."

---

[1]The judgment contains a clerical error: it lists 8 U.S.C. § 1326(b)*(2)* (prior "aggravated felony"), but the indictment to which Lopez Martinez pled guilty charges a violation of § 1326(b)*(1)* (just plain "felony").

(Certain capitalizations omitted). The plea agreement and the judgment generally reference Ariz. Rev. Stat. § 13-3102, but do not specify any subsection.

When Lopez Martinez committed the prior offense on January 28, 2002, Ariz. Rev. Stat. § 13-3102(A) (2001)[2] contained fourteen subsections listing many ways a person could "commit[] misconduct involving weapons." The ways ranged from "[m]anufacturing, possessing, transporting, selling or transferring a prohibited weapon," id. § 13-3102(A)(3), to "[d]efacing a deadly weapon," id. § 13-3102(A)(6), and "entering a commercial nuclear generating station carrying a deadly weapon" without being "specifically authorized by law," id. § 13-3102(A)(13). At the time, a "deadly weapon" was "anything that is designed for lethal use . . . includ[ing] a firearm." Id. § 13-3101(A)(1). And a "prohibited weapon" included, among a long list of items, (1) "shotgun[s] with a barrel length of less than eighteen inches [or] . . . as modified, [with] an overall length of less than twenty-six inches," and (2) any "[i]nstrument, including a nunchaku, that consists of two or more sticks, clubs, bars or rods to be used as handles, connected by a rope, cord, wire or chain, in the design of a weapon used in connection with the practice of a system of self-defense." Id. § 13-3101(A)(7).

The district court recognized that some violations of the Arizona statute would not qualify for the firearms offense enhancement, so Lopez Martinez could not receive the enhancement under the categorical approach mandated by the Supreme Court in Taylor v. United States, 495 U.S. 575 (1990). See id. at 600 (requiring sentencing courts to consider "the statutory definitions of the prior offenses, and not . . . the particular facts underlying those convictions"). But the district court believed Lopez Martinez's conviction qualified under the Supreme Court's "modified categorical approach," Descamps v. United States, 570 U.S. ___, ___, 133 S. Ct.

---

[2]All subsequent Arizona statutory references are to the 2001 version of the statutes, in effect on January 28, 2002.

2276, 2281 (2013). Under this modified approach, district courts may "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative" element of a "divisible statute" "formed the basis of the defendant's prior conviction." Id. After "looking at all of the materials available to the court," the district court in this case was "satisfied that the record provided is adequate to demonstrate" Lopez Martinez's Arizona conviction qualified for the firearms offense 16-level enhancement.

Applying the enhancement, the district court calculated an advisory guidelines range of 46 to 57 months in prison. Yet the district court expressed "significant concern that the [firearms offense] enhancement . . . creat[ed] a sentencing guideline range that [wa]s greater than necessary under the circumstances." The district court noted that "surrounding circumstances . . . suggest[ed] the actual nature of the offense in Arizona may have been different" from what the government believed. Because the district court recognized "some possibility of an unfair [enhancement] application," the district court gave Lopez Martinez "a bit of a break": a 16-month downward variance from the bottom of the range, yielding a prison sentence of 30 months. Lopez Martinez appeals, invoking our 28 U.S.C. § 1291 jurisdiction.

## II.    DISCUSSION

Reviewing the question de novo, see, e.g., United States v. Garcia-Medina, 497 F.3d 875, 876 (8th Cir. 2007), we conclude the record fails to show Lopez Martinez's Arizona conviction qualifies for the firearms offense enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(iii).

At the outset, we agree with the district court that Lopez Martinez's conviction was not "a firearms offense," id., under the categorical approach. See Taylor, 495 U.S. at 600. The Guidelines application notes define "firearms offense" by reference to several federal statutory provisions. U.S.S.G. § 2L1.2 cmt. n.1(B)(v). Comparing these federal statutes to the Arizona statute, it is clear many of the Arizona violations

-4-

would not qualify for the enhancement. For example, if Arizona convicted a defendant of erasing the serial number off his crossbow (apparently a violation of Ariz. Rev. Stat §§ 13-3101(A)(1)-(2) & 13-3102(A)(6)), or another defendant of carrying the druids' Excalibur into a nuclear power plant (a violation of §§ 13-3101(A)(1) & 13-3102(A)(13)[3]), or a third defendant of twirling nunchakus (in violation of §§ 13-3101(A)(7)(e) & 13-3102(A)(3), (H)), these convictions would not merit the enhancement because none matches a corresponding federal firearms offense. See U.S.S.G. § 2L1.2 cmt. n.1(B)(v); cf. 18 U.S.C. §§ 841(c), 844(h), 921, 924(c), 929(a); 26 U.S.C. § 5845.

Agreeing a conviction for violating Ariz. Rev. Stat. § 13-3102 does not categorically qualify for the firearms offense enhancement, we next consider whether Lopez Martinez's case falls into the "narrow range of cases" where the modified categorical approach can be used to qualify the defendant for a sentencing enhancement. Taylor, 495 U.S. at 602. Following Descamps, our first question is whether the Arizona statute is textually divisible between qualifying and non-qualifying convictions. See United States v. Tucker, 740 F.3d 1177, 1182 (8th Cir. 2014) (en banc) (relying on Descamps to prohibit application of "the modified categorical approach to anything other than explicitly divisible portions of statutes"). Looking at the fourteen subsections of Ariz. Rev. Stat. § 13-3102(A) and the numerous disjunctive definitions of the relevant terms defined by Ariz. Rev. Stat. § 13-3101(A), the answer is clearly yes. See Descamps, 570 U.S. at ___, 133 S. Ct. at 2285-86; United States v. Pate, ___ F.3d ___, ___, No. 13-1207, 2014 WL 2535302, at *3 (8th Cir. June 6, 2014). For example, if Arizona convicted a barkeep

---

[3]One might think King Arthur's mythical sword would qualify as a historic artifact—or at least as an antique—but the Arizona statute (in 2001, anyway) offered no exception of this sort for a private collector. Cf. Ariz. Rev. Stat. § 13-3102(D)(1) (offering a limited exception to § 13-3102(A)(3) and (7) for museums run by the government or "an organization described in section 170(c) of title 26 of the United States Code as a recipient of a charitable contribution").

of possessing a sawed-off shotgun he uses to threaten non-paying patrons, that conviction would merit the firearms offense enhancement because every violation of Ariz. Rev. Stat. §§ 13-3101(A)(7)(d) and 13-3102(A)(3) qualifies under U.S.S.G. § 2L1.2 cmt. n.1(B)(v)(I)-(II).[4]

Satisfied that *some* divisible violations of the Arizona statute qualify for the firearms offense enhancement, our next question is whether the record conclusively shows Lopez Martinez's conviction is one of these qualifying violations. See, e.g., Descamps, 570 U.S. at ___, 133 S. Ct. at 2285. The government insists the answer is yes, pointing to the original allegation that Lopez Martinez "knowingly manufactured, possessed, transported, sold, or transferred a SAWED-OFF SHOTGUN, a prohibited weapon." If Lopez Martinez were convicted of possessing a sawed-off shotgun in violation of § 13-3102(A)(3) and § 13-3101(A)(7)(d), the enhancement would apply. But Lopez Martinez neither pled guilty to, nor was convicted of, possessing a sawed-off shotgun in violation of these statutory subsections. He pled guilty to, and was convicted of, an *amended* charge.

From the judgment of conviction and the plea agreement, all we can glean about this amended charge is what these two documents say: "Solicitation to commit Misconduct Involving Weapons, a Class 6 undesignated felony offense, in violation

---

[4]Unlike Ariz. Rev. Stat. § 13-3102(A)(3), the Guidelines separate "possession" from "importation, distribution, transportation, or trafficking" offenses, U.S.S.G. § 2L1.2 cmt. n.1(B)(v)(I)-(II). Yet every violation of *both* § 13-3102(A)(3) and § 13-3101(A)(7)(d) will categorically qualify because the latter subsection defines a firearm prohibited under both subsections of U.S.S.G. application note 1: (B)(v)(I) (referring to firearms listed in 18 U.S.C. § 921) and (B)(v)(II) (referring to firearms listed in 26 U.S.C. § 5845(a)).

of [Ariz. Rev. Stat.] §§ 13-3101 [and] 13-3102."[5] These documents fail to specify any statutory subsection, so it is impossible to say whether Lopez Martinez was convicted of possessing a "prohibited weapon" under § 13-3102(A)(3), much less whether the "prohibited weapon" was a sawed-off shotgun described by § 13-3101(A)(7)(d). Looking at these documents, we simply do not know whether Lopez Martinez sought to possess a sawed-off shotgun, erase a crossbow serial number, carry a sword into a nuclear power plant, use nunchakus, or violate the statute in some other way. Any of these underlying Arizona crimes could match his plea agreement and judgment of conviction.

Because the only basis for narrowing Lopez Martinez's conviction to a qualifying offense is the pre-amendment information, the decisive question in this case becomes whether the sawed-off shotgun charge in that information may be used under the modified categorical approach. Had Lopez Martinez pled guilty to *that charge*, the answer would obviously be yes. See, e.g., Shepard v. United States, 544 U.S. 13, 25 (2005) (plurality op.). But he did not plead guilty to that charge, thus—as we now join our sister circuits in concluding—the answer is no. See, e.g., Prudencio v. Holder, 669 F.3d 472, 485-86 (4th Cir. 2012); United States v. Cabrera, 478 F. App'x 204, 207-08 (5th Cir. 2012) (unpublished per curiam); United States v. Gardner, 649 F.3d 437, 444 (6th Cir. 2011); Evanson v. Attorney Gen. of U.S., 550 F.3d 284, 293 (3d Cir. 2008); United States v. Vidal, 504 F.3d 1072, 1087 (9th Cir. 2007) (en banc).

Our conclusion, though overwhelmingly supported by the reasoning of other circuits, is based upon our independent review of the relevant Supreme Court cases. We begin with the premise that U.S.S.G. § 2L1.2(b)(1)(A)(iii) "does not authorize a

---

[5]The document also lists several other statutory provisions related to solicitation and sentencing, but they shed no additional light on which divisible crime in §§ 13-3101 and 13-3102 was at issue.

sentencing court to substitute . . . a facts-based inquiry for an elements-based one,'" Descamps, 570 U.S. at ___, 133 S. Ct. at 2293.[6] Under the elements-based inquiry, the sole permissible purpose of the modified categorical approach is "to determine which statutory phrase was the basis for *the conviction*." Johnson v. United States, 559 U.S. 133, 144 (2010) (emphasis added). To this end, a district court may "consult[] the indictment *to which [the defendant] pleaded guilty* in order to determine whether his *conviction* did entail the elements necessary to" qualify for a sentencing enhancement. United States v. Castleman, 572 U.S. ___, ___, 134 S. Ct. 1405, 1414 (2014) (emphasis added). "Applied in that way—which is the only way [the Supreme Court] ha[s] ever allowed—the modified approach merely helps implement the categorical approach when a defendant was *convicted* of violating a divisible statute." Descamps, 570 U.S. at ___, 133 S. Ct. at 2285 (emphasis added).

The modified categorical approach does not permit sentencing courts to do what the district court did in this case: "look[] to [an indictment] to discover what the defendant actually did." Id. at ___, 133 S. Ct. at 2287. "A court may use the modified approach *only* to determine which alternative element in a divisible statute formed the basis of the defendant's *conviction*." Id. at ___, 133 S. Ct. at 2293 (emphasis added). Whatever specific sawed-off shotgun violation the original information *alleged*, Lopez Martinez was only *convicted* of an unspecified (ergo

---

[6]Although Descamps specifically addressed the Armed Career Criminal Act's enumerated crimes clause, 18 U.S.C. § 924(e), and our present case involves a Guidelines provision, "we can discern no reason not to apply [the elements-based inquiry] here," Tucker, 740 F.3d at 1182. To do otherwise would (1) conflict with the plain text of § 2L1.2(b), "which penalizes . . . '*convictions*' for, rather than . . . *commissions* of, [specified] felon[ies]"; (2) "invite sentencing courts to make findings of fact that properly belong to juries under the Sixth Amendment"; and (3) "introduce practical difficulties and potential unfairness by pinning the" enhancement "to how well certain facts collateral to the underlying conviction were established and preserved in documents created for a different purpose." Tucker, 740 F.3d at 1182 (emphasis added).

categorically non-qualifying) violation. "The modified approach thus has no role to play in this case." Id. at ___, 133 S. Ct. at 2285.

Misunderstanding the Supreme Court's elements-based inquiry, the government emphasizes that Lopez Martinez agreed to forfeit a "sawed-off shotgun" as part of his plea agreement. To begin with, as Lopez Martinez explains in his brief, this forfeiture agreement does not necessarily mean he ever possessed any sawed-off shotgun. For example, if the shotgun were found in the possession of another defendant and the other defendant claimed the shotgun belonged to Lopez Martinez, the State as part of the plea agreement might request forfeiture from Lopez Martinez out of an abundance of caution—even if the evidence overwhelmingly showed the gun belonged to the other defendant and was never possessed by Lopez Martinez.[7] And even if Lopez Martinez actually possessed a shotgun, he pled guilty to a different and lesser charge. To look beyond his actual conviction would "deprive [him] of the benefits of [his] negotiated plea deal[]." Id. at ___, 133 S. Ct. at 2289. We cannot "allow a later sentencing court to rewrite the parties' bargain." Id.

More fundamentally, the elements-based approach prohibits reliance on the fact of the gun's forfeiture because a district court cannot "look behind [the defendant's] conviction in search of record evidence that he actually committed [a qualifying] offense." Id. at ___, 133 S. Ct. at 2293. The only permissible question is whether "the crime of which he was *convicted* . . . require[d] the factfinder (whether judge or jury) to make th[e] determination" that he possessed a sawed-off shotgun. Id. Did Lopez Martinez's "prior conviction necessarily involve[] (and [his] prior plea necessarily admit[])" possession of a sawed-off shotgun? Shepard, 544 U.S. at 24 (plurality op.) (internal quotation marks omitted). The plea agreement and the

---

[7]That this hypothetical example is plausible based on the record before us demonstrates how scant that record is. Like the district court, we can discern little about the circumstances leading to the Arizona conviction.

judgment of conviction resoundingly answer no. That answer would remain conclusive even if the forfeiture proved Lopez Martinez actually possessed a sawed-off shotgun. See Descamps, 570 U.S. at __, 133 S. Ct. at 2289.

## III. CONCLUSION

For these reasons, we reverse the district court's application of the firearms offense enhancement, vacate the sentence, and remand for resentencing.[8] Recognizing Lopez Martinez's guidelines range without the enhancement may be as low as 1-7 months, see U.S.S.G. sentencing table, and he has already served more than a year in prison, we issue the mandate forthwith.

———————————————————

[8]Because reversing the district court's application of the firearms offense enhancement requires us to vacate the sentence, we do not address Lopez Martinez's other sentencing challenges. Specifically, we leave open the question whether a conviction for *solicitation* to commit even a divisible, *qualifying* offense listed in Ariz. Rev. Stat. § 13-3102 would merit the firearms offense enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(iii). We also express no opinion whether Lopez Martinez's prior conviction qualifies for a different § 2L1.2(b) enhancement.